UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

LAWRENCE G. HASH,

        Plaintiff,

    v.

M. GIACOMAZZI, et al.,

        Defendants.

Case No. 22-cv-07162 EJD (PR)

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT FOR FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES**

(Docket No. 66)

Plaintiff, a state prisoner, filed the instant <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983, against prison staff at San Quentin Rehabilitation Center[1] ("SQRC"). This action involves due process and retaliation claims involving a Rules Violation Report ("RVR") issued on March 5, 2016. Dkt. No. 8. Defendants Correctional Officer M. Giacomazzi, Lt. Daryle Dorsey, Sgt. D. Petrovic, Lt. M. Bloise, Associate Warden P. Covello, and Lt. J. Lanier moved to dismiss the due process claim, which the Court granted. Dkt. No. 38. The Court terminated Defendants Bloise, Covello, and Lanier from this action and ordered briefing on the remaining retaliation claim against remaining Defendants. <u>Id.</u>

Defendants Petrovic, Giacomazzi, and Dorsey filed a motion for summary judgment based on the grounds that Plaintiff failed to exhaust administrative remedies with respect

---

[1] At the time of the filing of this action, the facility was known as San Quentin State Prison.

1

2

3

to the retaliation claim, the claim fails on the merits, and they are entitled to qualified immunity.  Dkt. No. 66.[2]  Plaintiff filed opposition which is accompanied by his declaration and exhibits.  Dkt. Nos. 74, 72.[3]  Defendants filed a reply.  Dkt. No. 77.

4

5

6

7

8

9

10

11

12

13

14

15

16

In opposition, Plaintiff requests Defendants' summary judgment motion be denied or deferred until pending discovery disputes are resolved.  Dkt. No. 74 at 10-11.  In their reply, Defendants oppose this request under Federal Rule of Civil Procedure 56(d), asserting Plaintiff failed to provide an affidavit or declaration as required under the rule.  Dkt. No. 77 at 5.  Defendants also assert that they fully responded to Plaintiff's discovery requests and that he is merely disappointed with their responses.  Id. at 6.  They also assert that his requests for discovery involve information that is irrelevant and not essential to opposing summary judgment, as well as duplicative of prior requests.  Id.  Plaintiff has filed no reply.  Plaintiff's request is DENIED for failure to file a supporting affidavit or declaration as required by Rule 56(d).  Fed. R. Civ. P. 56(d).  Furthermore, the Court has reviewed Defendants' responses to discovery and finds no deficiency or bad faith.  Dkt. No. 72-2 at 26-72.

///

17

18

19

20

21

22

23

24

[2] In support of their summary judgment motion, Defendants submit the following declarations and exhibits: (1) Defendant M. Giacomazzi with exhibits containing copies of the RVR and disciplinary hearing report, Dkt. No. 66-3 (Ex. A); (2) Defendant D. Dorsey, Dkt. No. 66-4; (3) nonparty Howard E. Mosely, Associate Director of the Office of the Appeals, with exhibits containing copies of Plaintiff's appeal history and appeals records, Dkt. Nos. 66-5 thru 66-18; (4) nonparty M. Torres, Grievance Coordinator for the Office of Grievances at SQRC with exhibits containing copies of Plaintiff's grievance records, Dkt. Nos. 66-19 thru 66-22; (5) Deputy Attorney General Jennifer Burns with an exhibit containing a transcript of Plaintiff's deposition taken on November 18, 2024 (Pl.'s Dep.), Dkt. No. 66-23; and (6) Defendant D. Petrovic with an exhibit containing a copy of the RVR and related supporting documents, Dkt. No. 66-24.  Furthermore, Defendants filed a corrected separate statement along with their notice of *errata*, to replace the one filed with their summary judgment motion (Dkt. No. 66-1).  Dkt. No. 76.

25

26

27

[3] Along with his opposition, Plaintiff filed a "responsive separate statement," in which he disputes specific facts set forth in Defendants' Separate Statement.  Dkt. No. 74 at 12-24.  Plaintiff also provides a 40-page declaration, Dkt. No. 74 at 43-83, and exhibits containing copies of his grievances, RVRs, and discovery responses, among other items, Dkt. No. 72, 72-1, 72-2.

28

United States District Court
Northern District of California

2

For the reasons set forth below, Defendants' motion for summary judgment is **GRANTED**.

## DISCUSSION

### I.    Statement of Facts[4]

From 2014 to 2016, the Investigative Services Unit ("ISU") conducted an extensive investigation into multiple threatening anonymous notes delivered through SQRC's mail. Petrovic Decl. ¶ 2, Ex. A; Giacomazzi Decl. ¶ 2.  The notes were addressed to various correctional staff and threatened harm to them and their family members.  Petrovic Decl. ¶ 3, Ex. A.  As part of the investigation, ISU interviewed various inmates who had knowledge of the anonymous notes.  Petrovic Decl. ¶ 2, Ex. A; Giacomazzi Decl. ¶ 2.  The interviews led ISU to identify Plaintiff as a suspected author of the notes.  Id.  ISU located documents containing Plaintiff's handwriting to compare to the handwriting on the anonymous notes; those documents included grievances prepared by Plaintiff for another inmate and writing samples located in Plaintiff's cell.  Petrovic Decl. ¶¶ 2, 8, Ex. A 2-4.  ISU also determined that the anonymous threatening notes coincided with Plaintiff's transfer to SQRC.  Petrovic Decl. ¶ 8, Ex. A at 4.  At the conclusion of the investigation on March 9, 2016, ISU determined that Plaintiff was the sole culpable party who authored the notes.  Id.  ISU further determined that Plaintiff, through forgery, attempted to conceal his involvement and shift blame to other inmates.  Id.

According to Plaintiff, Defendant Petrovic's "substantial motivating intent to have Giacomazzi search my cell was an extension of his original retaliation relevant to the 1st search of my west-block cell 1-W-43 pm 2/4/2016, which involved several retaliatory reasons, including the fact that my 602 appeal #CSQ-J-14-02500 was granted in full" on January 11, 2016.  Hash Decl. ¶ 5, Dkt. No. 74 at 44.  According to Plaintiff, Defendant Petrovic was "at the center of that appeal issue, which was an extremely confrontational

---

[4] The following facts are undisputed unless otherwise indicated.

appeal process because Petrovic was the 1st level reviewer of that appeal" and they "bucked horns so badly he was extremely angry at me." Id. ¶ 6. According to Plaintiff, he was involved in helping several inmates file grievances and staff complaints in West Block, and that it became known to staff that he was doing so. Id. ¶¶ 8-14. Then on February 4, 2016, he was interrogated by Defendants Petrovic, Dorsey, and Giacomazzi, who questioned him regarding the appeals, staff complaints, and lawsuits they found in his cell that day. Id. ¶ 18. Plaintiff alleges Defendant Petrovic threatened to put him in the "hole" for his protected conduct and also to issue an RVR. Id. ¶ 19. Plaintiff alleges that he knew from Defendants' threats that they "intended to scare me out of filing more 602 appeals and staff complaints." Id. ¶ 23. Plaintiff claims Defendants then showed him a "large stack of anonymous notes" and urged him to "either take responsibility for writing all those anonymous threating notes or tell us who is responsible for writing them." Id. ¶ 24.

Four days before the investigation concluded, on March 5, 2016, Defendant Giacomazzi searched Plaintiff's cell at the direction of Defendant Petrovic to search for evidence of Plaintiff's involvement in the anonymous notes investigation. Giacomazzi Decl. ¶ 3; Petrovic Decl. ¶ 4. According to Defendants, the search of Plaintiff's cell was crucial to the investigation so that the ISU could find corroborating, or exculpatory evidence that Plaintiff authored the notes. Giacomazzi Decl. ¶ 4; Petrovic Decl. ¶ 5. Plaintiff was the sole occupant of the cell. Giacomazzi Decl. ¶ 5. According to Plaintiff, Defendants were using the anonymous notes as a "pretext" to stop him from using the prison's appeal system and place him in ad-seg pending transfer to another prison. Hash Decl. ¶ 31. Plaintiff alleges that Defendants had already searched his cell on February 4, 2016, and that Defendants based the March 5, 2016 search on "unspecific random reasons to continue searching the very same property they previously searched." Id. ¶ 90.

Defendant Giacomazzi found a metal, single edge box-cutter razorblade measuring 1 ½ inches in length and ¾ of an inch in width in a folder of paperwork labeled

4

"Pen/Pal/Miscellaneous Stuff" in Plaintiff's cell.  Giacomazzi Decl. ¶ 5; Petrovic Decl. ¶ 6.

Plaintiff denied the razor blade was his and accused Defendant Giacomazzi of planting it

in his cell.  Dkt. No. 1 at ¶¶ 45, 47.  According to Plaintiff, the cell search was conducted

in retaliation for prior staff complaints Plaintiff filed against Defendant Giacomazzi.  Dkt.

No. 1 at 24-25, ¶¶ 43-45.  Defendant Giacomazzi denies planting the razorblade in

Plaintiff's cell.  Giacomazzi Decl. ¶ 5.

On March 18, 2016, Defendant Giacomazzi charged Plaintiff with possession of a

deadly weapon in RVR log no. 4690.  Dkt. No. 1 at ¶ 50; Dkt. No. 2 at 74; Giacomazzi

Decl. ¶ 7, Ex. A; Petrovic Decl. ¶ 9.  According to Defendants, Defendant Giacomazzi was

required to issue RVR 4690 because he discovered a box-cutter razorblade in Plaintiff's

cell which is prohibited under prison regulations.  Giacomazzi Decl. ¶¶ 6-8.  The RVR

stated the following:

> On Saturday March 5, 2016 at approximately 0749 hours… I
> conducted a cell search of the Adjustment Center 1st tier cell number 56
> (1AC56L) solely housed by Inmate Hash, Lawrence G. P-00376.  After
> performing approximately forty (40) minutes of searching, I discovered in a
> legal paperwork box, hidden between sheets of paper, located in a legal
> mail folder labeled "Pen/Pal/Miscellaneous Stuff", one (1) box cutting type
> razor blade.  The weapon measured approximately 1 and [1/2] inches in
> length and approximately [3/4] of an inch in width.  The slicing/slashing
> type weapon is made of metal, with one side sharpened to a razor point, the
> other side reinforced with metal to allow for handling without cutting
> oneself.  I found a piece of brown paper lunch bag and placed the weapon
> in it so that I would not cut myself with the extremely sharp weapon.  I
> placed the weapon wrapped in the brown paper in my front left uniform
> shirt pocket and told Correctional Officer Acero, who was searching with
> me, what I had found.  I explained to Officer Acero where I discovered the
> weapon and how I discovered it.  Being in possession of a box cutting type
> razor is a clear violation of the Title 15 CCR section 3006(a).  On Monday
> March 7, 2016 ISU determined that there is pertinent information specific
> to this Rules Violation Report (please refer to confidential memorandum
> authored by ISU Sergeant Petrovic on August 6, 2014).

A weapon is described by the California Penal Code 4502(a) as:

5

(a) Every person, who, while at or confined in any penal institution, while being conveyed to or from any penal institution, or while under the custody of officials, officers, or employees of any penal institution, possess or carries upon his or her person or has under his or her custody or control any instrument or weapon of the kind commonly known as a blackjack, slungshot, billy, sandclub, sandbag, or metal knuckles, any explosive substance, or fixed ammunition, any dirk or dagger or sharp instrument, any pistol, revolver, or other firearm, or any tear gas or tear gas weapon, is guilty of a felony and shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years, to be served consecutively.

Deadly weapon also includes anything capable of serious or lethal injury.  Possession includes both actual and constructive possession.

Construction possession means one person retains control or ownership while it is in the actual possession of another.  Each inmate has an assigned area of responsibility and anything found within this area of responsibility is presumed to be in his possession.

Dkt. No. 2 at 74.  The offense was classified as a "Division A1" offense.  Id. at 75.  According to Defendants, discovery of the razorblade in Plaintiff's cell raised serious safety concerns, especially since the anonymous notes Plaintiff was suspected of authoring threatened to use a blade to inflict great bodily injury on SQRC staff.  Giacomazzi Decl. ¶¶ 6-8; Petrovic Decl. ¶ 7.  Defendant Petrovic reviewed and approved RVR log No. 4690.  Giacomazzi Decl. ¶ 7; Petrovic Decl. ¶ 9.  Defendant Dorsey classified RVR log No. 4690 as serious because the charge involved possessing a box-cutter razorblade, which was considered dangerous contraband under Cal. Code Regs. tit. 15 § 3315.  Dorsey Decl. ¶¶ 3-4; Giacomazzi Decl., Ex. A.  In his defense, Plaintiff argued that the "razor blade that was allegedly found in my cell does not meet the definition of a weapon defined by CCR 3000 (Dangerous Contraband) because it was not altered or modified or used in a threatening manner which could have resulted in serious bodily injury."   Dkt. No. 2-1 at 38-39.  Plaintiff was found guilty at a second disciplinary hearing.  Dkt. No. 1 ¶ 70; Giacomazzi Decl., Ex. A.

1
2
3
4
5
6
7

Plaintiff's claim that his due process rights were violated in the subsequent disciplinary proceedings for the above RVR was dismissed for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) because, taking the allegations as true, no liberty interest was implicated, Plaintiff received all procedural protections, and there was some evidence to support the RVR.  Dkt. No. 38 at 20.  The only claim remaining in this action is Plaintiff's claim that Defendants issued and processed the RVR in retaliation for filing grievances and lawsuits.

A.    **Plaintiff's Grievances**

Plaintiff submitted inmate grievance (Log No. SQ-16-00652) related to the allegedly retaliatory cell search on March 5, 2016.  Torres Decl. ¶ 7(a); Moseley Decl. ¶ 8. Ex. 2.  In grievance Log No. SQ-16-00652, Plaintiff stated, "Giacomazzi planted the razor blade in my property as an act of retaliation against me" and that his "complaint with internal affairs caused Giacomazzi to obtain a false witness (Acero)."  Mosely Decl. ¶ 8, Ex. 2, Dkt. No. 66-5 at 42.  Although Plaintiff mentions the RVR in the grievance, there is no allegation that RVR log No. 4690 was issued, reviewed, or approved as an act of retaliation, nor does he mention Defendants Petrovic and Dorsey.  Id.

The first level of review was bypassed.  Id., Ex. A.  On April 26, 2016, Plaintiff received a response from the second level of review, which partially granted his grievance in that an inquiry in Plaintiff's allegation was conducted and staff was found not to have violated CDCR policy.  Id.  Plaintiff appealed the second level decision on July 11, 2016. Id.  His appeal does not mention or reference Defendants Petrovic or Dorsey, nor does it allege that RVR log No. 4690 was issued, reviewed, or approved as an act of retaliation. Id.  By letter dated October 4, 2016, the third level of review denied Plaintiff's appeal.  Id.

Plaintiff also submitted one grievance (Log No. SQ-G-16-1828) concerning RVR log No. 4690.  Torres Decl. ¶ 7(b); Moseley Decl. ¶ 9, Ex. 3.  In this grievance, Plaintiff stated that there were various due process errors at the second disciplinary hearing on RVR log no. 4690, i.e., the disciplinary hearing on the re-issued and reheard RVR.  Moseley

7

1

2

Decl., Ex. 3. Dkt. No. 66-6 at 5, 7.  The grievance does not allege that RVR log no. 4690 was issued, reviewed, or approved as an act of retaliation by Defendants.  Id.

3

4

5

6

7

The first level of review was bypassed.  Id.  The second level of review denied the grievance on August 31, 2016.  Id.  Plaintiff appealed to the third level of review on September 18, 2016.  Id.  This appeal did not state that RVR log no. 4690 was issued, reviewed, or approved as an act of retaliation by Defendants.  Id.  On March 14, 2017, the third level of review denied the appeal.  Id.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

Between March 5, 2016 (the date of the cell search) and February 3, 2020 (the date the complaint was filed), Plaintiff submitted forty (40) other grievances arising out of SQRC[5]: (1) SQ-C16-00464; (2) SQ-C-16-00503 (3) SQ-C-16-00535; (4) SQ-B-17-00471; (5) SQ-B-17-00492, reassigned institutional no. SQ-D-17-0965; (6) SQ-B-17576; (7) SQ-B-00577; (8) SQ-A-16-00108; (9) SQ-A-16-00186; (10) SQ-A-16-02442; (11) SQ-A-16-02857; (12) SQ-A-16-02898; (13) SQ-A-17-00195; (14) SQ-A-17-00218; (15) SQ-D-16-00651; (16) SQ-D-16-00694; (17) SQ-D-16-00764; (18) SQ-X-16-02429; (19) SQ-D-17-00987; (2) SQ-X-17-01309; (21) SQ-X-17-01421; (22) SQ-X-17-01466; (23) SQ-X-17-01543; (24) SQ-X-17-01978; (25) SQ-X-17-01979; (26) SQ-X-17-03028; (27) SQ-H-16-01980; (28) SQ-H-16-01981; (29) SQ-I-16-02341; (30) SQ-I-16-02414; (31) SQ-F-16-01183; (32) SQ-E-16-00890; (33) SQ-E-16-00960; (34) SQ-E-1600961; (35) SQ-E-16-01150; (36) SQ-J-16-02592; (37) SQ-J-16-02706; (38) SQ-K-16-02878; (39) SQ-K-16-02929; and (4) SQ-L-16-03036.  Torres Decl. ¶ 8, Exs. B-V; Moseley Decl. ¶¶ 10-11, Exs. 4-43.  Furthermore, Plaintiff appealed a total of 42 grievances to the third level of review between March 5, 2016, and February 3, 2020.  Moseley Decl. ¶¶ 8-11.

23

24

25

26

27

[5] Grievance log numbers identify the institution by including the institution's initials. Torres Decl. ¶ 6.  For example, any grievance arising out of SQRC would include the initials "SQ" in the first portion of the log number.  Id.  If any inmate files a grievance about an institution he is no longer housed at, the grievance is re-routed to the offending institution and assigned a new grievance log number, with the initials of the offending institution.  Id.  Accordingly, any grievance concerning the March 5 cell search or RVR log no. 4690 would include the initials "SQ" in the first portion of the log number.  Id.; Moseley Decl. ¶ 3.

28

United States District Court
Northern District of California

**United States District Court**
**Northern District of California**

## II.     Summary Judgment

Summary judgment is proper where the pleadings, discovery and affidavits show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Cattrett, 477 U.S. 317, 322-23 (1986).  A fact is material if it might affect the outcome of the lawsuit under governing law, and a dispute about such a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact.  See Celotex Corp., 477 U.S. at 323.  Where the moving party will have the burden of proof on an issue at trial, it must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party.  But on an issue for which the opposing party will have the burden of proof at trial, the moving party need only point out "that there is an absence of evidence to support the nonmoving party's case." Id. at 325.  If the evidence in opposition to the motion is merely colorable, or is not significantly probative, summary judgment may be granted.  See Liberty Lobby, 477 U.S. at 249-50.

The burden then shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial.'" Celotex Corp., 477 U.S. at 324 (citations omitted); Fed. R. Civ. P. 56(e).  "This burden is not a light one.  The non-moving party must show more than the mere existence of a scintilla of evidence." In re Oracle Corporation Securities Litigation, 627 F.3d 376, 387 (9th Cir.

2010) (citing <u>Liberty Lobby</u>, 477 U.S. at 252). "The non-moving party must do more than show there is some 'metaphysical doubt' as to the material facts at issue." <u>Id.</u> (citing <u>Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)). "In fact, the non-moving party must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." <u>Id.</u> (citing <u>Liberty Lobby</u>, 477 U.S. at 252). If the nonmoving party fails to make this showing, "the moving party is entitled to judgment as a matter of law." <u>Id.</u> at 323.

The Court's function on a summary judgment motion is not to make credibility determinations or weigh conflicting evidence with respect to a material fact. <u>See</u> <u>T.W. Elec. Serv., Inc. V. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630 (9th Cir. 1987). The evidence must be viewed in the light most favorable to the nonmoving party, and the inferences to be drawn from the facts must be viewed in a light most favorable to the nonmoving party. <u>See id.</u> at 631. It is not the task of the district court to scour the record in search of a genuine issue of triable fact. <u>Keenan v. Allen</u>, 91 F.3d 1275, 1279 (9th Cir. 1996). The nonmoving party has the burden of identifying with reasonable particularity the evidence that precludes summary judgment. <u>Id.</u> If the nonmoving party fails to do so, the district court may properly grant summary judgment in favor of the moving party. <u>See id.</u>; <u>see, e.g.</u>, <u>Carmen v. San Francisco Unified School District</u>, 237 F.3d 1026, 1028-29 (9th Cir. 2001).

### A.    <u>Exhaustion</u>

The Prison Litigation Reform Act of 1995, Pub. L. No. 104-134, 110 Stat. 1321 (1996) ("PLRA"), amended 42 U.S.C. § 1997e to provide that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Exhaustion is mandatory and no longer left to the discretion of the district court. <u>Woodford v. Ngo</u>, 548 U.S. 81, 84 (2006) (citing <u>Booth v. Churner</u>, 532 U.S. 731, 739

United States District Court
Northern District of California

10

(2001)).  Courts may not create their own "special circumstances" exceptions to the exhaustion requirement.  <u>Ross v. Blake</u>, 578 US. 632, 638 (2016) (reversing Fourth Circuit's ruling that failure to exhaust was justified where prisoner reasonably—even though mistakenly—believed he had exhausted remedies).

The PLRA's exhaustion requirement cannot be satisfied "by filing an untimely or otherwise procedurally defective administrative grievance or appeal."  <u>Woodford</u>, 548 U.S. at 84.  "The text of 42 U.S.C. § 1997e(a) strongly suggests that the PLRA uses the term 'exhausted' to mean what the term means in administrative law, where exhaustion means proper exhaustion."  <u>Id.</u> at 92.  Therefore, the PLRA exhaustion requirement requires proper exhaustion.  <u>Id.</u>  "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."  <u>Id.</u> at 90-91 (footnote omitted).  Compliance with prison grievance procedures is all that is required by the PLRA to "properly exhaust."  <u>Jones v. Bock</u>, 549 U.S. 199, 217-18 (2007).  A prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court.  <u>Id.</u>

Nonexhaustion under § 1997e(a) is an affirmative defense.  <u>Jones v. Bock</u>, 549 U.S. 199, 211 (2007).  Defendants have the burden of raising and proving the absence of exhaustion, and inmates are not required to specifically plead or demonstrate exhaustion in their complaints.  <u>Id.</u> at 215-17.  A defendant who raises the issue of nonexhaustion in a motion for summary judgment under Rule 56 of the Rules of Civil Procedure must produce evidence demonstrating failure to exhaust.  <u>Albino v. Baca</u>, 747 F.3d 1162, 1172, 1176 (9th Cir. 2014) (en banc).  If undisputed evidence viewed in the light most favorable to the prisoner shows a failure to exhaust, a defendant is entitled to summary judgment under Rule 56.  <u>Id.</u> at 1166.  But if material facts are disputed, summary judgment should be denied and the district judge rather than a jury should determine the facts in a preliminary

11

1    proceeding.  Id.

2          Administrative remedies may not be exhausted where the grievance, liberally

3    construed, does not have the same subject and same request for relief.  See, e.g., Morton v.

4    Hall, 599 F.3d 942, 946 (9th Cir. 2010) (grievance that complained of visitation

5    restrictions, and did not mention an assault or theorize that the visitation restriction

6    imposed was related to the assault, was insufficient to put prison officials on notice that

7    staff misconduct contributed to the assault); O'Guinn v. Lovelock Correctional Center, 502

8    F.3d 1056, 1062, 1063 (9th Cir. 2007) (even with liberal construction, grievance

9    requesting a lower bunk due to poor balance resulting from a previous brain injury was not

10   equivalent to, and therefore did not exhaust administrative remedies for, claims of denial

11   of mental health treatment in violation of the ADA).

12         The defendant's burden is to prove that there was an available administrative

13   remedy and that the prisoner did not exhaust that available administrative remedy.  Albino,

14   747 F.3d at 1172; see id. at 1176 (reversing district court's grant of summary judgment to

15   defendants on issue of exhaustion because defendants did not carry their initial burden of

16   proving their affirmative defense that there was an available administrative remedy that

17   prisoner plaintiff failed to exhaust); see also Brown v. Valoff, 422 F.3d 926, 936-37 (9th

18   Cir. 2005) (as there can be no absence of exhaustion unless some relief remains available,

19   movant claiming lack of exhaustion must demonstrate that pertinent relief remained

20   available, whether at unexhausted levels or through awaiting results of relief already

21   granted as result of that process).  Once the defendant has carried that burden, the prisoner

22   has the burden of production.  Albino, 747 F.3d at 1172.  That is, the burden shifts to the

23   prisoner to come forward with evidence showing that there is something in his particular

24   case that made the existing and generally available administrative remedies effectively

25   unavailable to him.  Id.  But as required by Jones, the ultimate burden of proof remains

26   with the defendant.  Id.

27         At the time of the underlying incidents, the regulations provided CDCR inmates and

28                                                  12

United States District Court
Northern District of California

paroles the right to appeal administratively "any policy, decision, action, condition, or omission by the department or its staff that the inmate or parolee can demonstrate as having a material adverse effect upon his or her health, safety, or welfare." Cal. Code Regs. tit. 15, § 3084.1(a) (repealed eff. June 1, 2020). Inmates also had the right to file administrative appeals alleging misconduct by correctional officers. See id. The appeal must describe the "specific issue under appeal and the relief requested" and "shall list all staff member(s) involved and shall describe their involvement in the issue." If the inmate "does not have the requested identifying information about the staff member[s], he or she shall provide any other available information that would assist the appeals coordinator in making a reasonable attempt to identify the staff member(s) in question." Cal. Code Regs. tit. 15, §§ 3084.2(a), 3084.8(b).

From January 28, 2011, until June 1, 2020, the regulations provided a three-level system for an inmate to exhaust administrative remedies with regard to non-healthcare appeals: first level appeal, second level appeal, and third level appeal. Cal. Code Regs. tit. 15, § 3084.7 (repealed eff. June 1, 2020). In order to exhaust available administrative remedies within this system, a prisoner had to submit his complaint on CDCR Form 602 (referred to as a "602") and proceed through four levels of appeal: (1) informal level grievance filed directly with any correctional staff member, (2) first formal level appeal filed with one of the institution's appeal coordinators, (3) second formal level appeal filed with the institution head or designee, and (4) third formal level appeal filed with the CDCR director or designee. Id. § 3084.5 (repealed eff. Jan. 28, 2011); Brodheim v. Cry, 584 F.3d 1262, 1264-65 (9th Cir. 2009).

### 1.    Plaintiff's Administrative Grievances

Defendants assert that the only relevant grievances are Log No. SQ-16-00652 concerning the March 5, cell search, and Log No. SQ-G-16-1828 concerning the disciplinary hearing on RVR log no. 4690. Dkt. No. 66-2 at 16. Defendants assert that Plaintiff did not claim that RVR log no. 4690 was an act of retaliation, nor did he mention

Lt. Petrovic or Capt. Dorsey.  Id.  Defendants contend, therefore, that Plaintiff failed to exhaust his claim arising out of the allegedly retaliatory RVR and the claim must be dismissed.  Id.  In opposition, Plaintiff asserts that Log No. SQ-16-00652 and another grievance, Log No. SQ-16-00464, exhausted his claim.  Dkt. No. 74 at 27.  In the alternative, Plaintiff asserts that there are reasons to believe that there were no available administrative remedies for him to exhaust.  Id. at 31.

### a.    Grievance Log No. SQ-16-00464

Grievance Log No. SQ-16-00464 was filed on March 1, 2016, and complained of "Procedures, Staff Actions on 2/4/16, 2/9/16, 2/10/16."  Dkt. No. 74 at 27; see also Moseley Decl., Ex. 4 (Dkt. No. 66-7 at 15).  Plaintiff claimed that on February 4, 2016, two unnamed officers came to his cell to conduct a search and used excessive force in removing him from the cell; they confiscated some of his legal property.  Id.  The same two officers later returned with Lt. Dorsey and Sgt. Petrovic to issue a RVR and place him in ad-seg.  Id. at 17.  He also claimed Lt. Dorsey and Sgt. Petrovic took a "green paper" containing a sketched design of an envelope which he intended to patent/copyright.  Id.  He also included several other allegations against other prison staff.  Id.  Under "action requested," Plaintiff claimed that Lt. Dorsey and Sgt. Petrovic retaliated against him by "intentionally withhold[ing] my court records and document making it impossible for me to litigate my pending legal cases in the 9th Cir. Court of Appeals and now in the California Supreme Court."  Id.  Plaintiff sought various actions, including an accurate property report, return of property that was confiscated and replacement of destroyed property, and restoration of programs.  Id.

In reply, Defendants contend this grievance did not exhaust Plaintiff's retaliation claims because it was submitted about an entirely different incident, which preceded the allegedly retaliatory RVR.  Dkt. No. 77 at 7.  Defendants contend Plaintiff's "continuing violation" argument fails because this was not continuous conduct and Log No. SQ-C-16-00464 did not mention retaliation.  Id., citing Sheltra v. Christensen, 124 F.4th 1195, 1203

14

United States District Court
Northern District of California

(9th Cir. 2024).  Defendants assert that Plaintiff alleged that his property was improperly handled and that officers injured him during the February 4, 2016 cell search; he did not allege that staff were retaliating against him or that the conduct was continuous.  Id. at 8. Defendants contend that there was therefore no continuing violation alleged in Log No. SQ-16-00464.  Id.

In Sheltra, the Ninth Circuit adopted the "continuing-violations doctrine": "[W]e now hold that under the continuing-violations doctrine, a properly exhausted prison grievance asserting 'one, continuing harm or a single course of conduct' can exhaust events arising out of the same alleged violation that occur after the grievance was made." Sheltra, 124 F.4th at 1203 (plaintiff's March-filed grievance identifying threats from other prisoners was sufficient under the continuing-violations doctrine to exhaust his claims seeking relief for the later-occurring attack in April because the attack was part of the same continuing harm he previously grieved).

After a careful review of the evidence and construing facts in the light most favorable to Plaintiff, the Court finds there are no genuine issues of material fact as to whether Log No. SQ-C-16-00464 exhausted Plaintiff's retaliation claim.  First of all, this grievance did not allege that any Defendant took adverse action against Plaintiff by issuing a false RVR but rather complained of excessive force during a cell search and lost or damaged property therefrom.  Furthermore, this grievance *preceded* the allegedly retaliatory RVR log no. 4690, which was issued over a month later, and therefore cannot have exhausted a claim arising from an incident that had not yet occurred.

Lastly, Plaintiff's attempt to assert that Log No. SQ-C-16-00464 constitutes exhaustion by alleging a "continuing violation" is not persuasive.  Sheltra established that to properly exhaust a "continuing violation," the specific grievance must assert "one, continuing harm or a single course of conduct" in order to exhaust events arising out of the same alleged violation that occur *after* the grievance was made.  Sheltra, 124 F.4th at 1203.  Nowhere in Log No. SQ-C-16-00464 did Plaintiff allege that the named staff

15

members were engaging in "one, continuing harm" or a "single course of conduct"
involving retaliatory RVRs.  Rather, he alleged that two officers used excessive force,
which is not the subject of this action.  Furthermore, he alleged that Defendants Dorsey
and Petrovic took property, which is also not the subject of this action.  The only mention
of retaliation was Plaintiff's allegation that Defendants Dorsey and Petrovic withheld his
court records, implying they interfered with his right of access to the courts which is also
not the subject of this action.  See supra at 15.  There is simply no allegation that
Defendants retaliated against him by issuing, reviewing, or approving false RVRs.

Furthermore, the Court notes that Plaintiff did not know the names of the officers
who conducted the February 4, 2016 cell search at the time, and only learned that one of
them was Defendant Giacomazzi during the appeal process.  Dkt. No. 66-7 at 13.
Therefore, he could not allege in Log No. SQ-C-16-00464 that Defendant Giacomazzi had
engaged in a "continuing violation" when that search appears to be the first time Plaintiff
had a reason to complain about this Defendant.

Based on the foregoing, the Court finds Defendants have shown that there is no
genuine dispute of material fact with respect to Log No. SQ-C-16-00464 being an
insufficient basis to establish exhaustion of Plaintiff's retaliation claim against Defendants.

### b.  Grievance Log No. SQ-16-00652

Defendants contend that grievance Log No. SQ-16-00652 is the only grievance
concerning the March 5 cell search.  Dkt. No. 66-2 at 16; Moseley Decl. ¶¶ 8, 10, 11, Ex.
2; Torres Decl. ¶¶ 7(a), 8.  In that grievance, which was submitted 23 days after the subject
RVR was issued, Plaintiff alleged that Lt. Giacomazzi planted a razorblade in his cell "as
an act of retaliation."  Moseley Decl. ¶ 8, Ex. 2.  Defendants point out that Plaintiff did not
mention RVR log no. 4690, much less identify that RVR as an adverse action that
Defendants took against him in response to Plaintiff's protected conduct.  Dkt. No. 66-2 at
16.  Defendants also assert that Plaintiff failed to identify or discuss any involvement by
Defendants Petrovic or Dorsey in this grievance, and therefore he failed to exhaust his

claim against them through that grievance. Id. at 17.

In opposition, Plaintiff asserts that this grievance and Log No. SQ-16-00464 "combined together… fully comply with CCR-3084.2(a)(3) by addressing Dorsey, Petrovic, and Giacomazzi's retaliatory conduct from the 2/4/2016 search of Plaintiff's west-block cell 1-W-43 all the way to the 3/5/2016 search of Plaintiff's ad/seg cell 1-AC-56." Dkt. No. 74 at 30. He asserts that Defendants admit that there was a "connection" between the evidence that was confiscated during the February 4, 2016 search and the March 5 search. Id. at 31, citing Request for Admission No. (9).

In reply, Defendants repeat their assertion that this grievance did not exhaust Plaintiff's retaliation claim. Dkt. No. 77 at 7. They assert that according to the Court's initial screening order, the claim that the cell search was retaliatory was not before the Court, and grieving that the razor blade was planted ostensibly refers to a retaliatory cell search rather than a retaliatory RVR. Id. Defendants contend that the grievance did not identify the RVR as an adverse action that Defendants took against Plaintiff for his protected conduct. Id., citing Cal. Code Regs. tit. 15 § 3084.2(a)(3) (requiring inmate identify staff members and their involvement in the case).

After a careful review of the evidence and construing facts in the light most favorable to Plaintiff, the Court finds there are no genuine issues of material fact as to whether Log No. SQ-16-00652 exhausted Plaintiff's retaliation claim against Defendants Giacomazzi, Petrovic, and Dorsey. First, Plaintiff's argument that this grievance "combined" with Log No. SQ-16-00464 exhausted his claim fails. As the Court already determined above, Plaintiff has failed to establish any "continuing violation" based on Defendants' conduct from the February 4, 2016 cell search. See supra at 15. Secondly, it is undisputed that the grievance does not mention Defendants Dorsey and Petrovic, which is a basic requirement of Cal. Code Regs. tit. 15, § 3084.2(a)(3). Nor does Plaintiff allege that he was unaware of their involvement or identities at the time he filed the grievance and therefore could not name them. Even if he did not know their names, he could still

include sufficient information to allow prison officials to identify the responsible individuals. Thirdly, although it is clear from the grievance that Defendant Giacomazzi conducted the cell search, the grievance does not actually allege that he was the one who issued the allegedly retaliatory RVR. Rather, Plaintiff alleges that "on 3/18/16, C/O Lopez issued me a RVR for (possession of a dangerous weapon)." Dkt. No. 72 at 3; Dkt. No. 66-5 at 42. The evidence submitted by both parties does not contain any RVR dated March 18, 2016, so it is unclear what RVR Plaintiff is referring to in this grievance. Furthermore, although it is undisputed that Defendant Giacomazza did issue the allegedly retaliatory RVR log no. 4690, Dkt. No. 66-5 at 53, it cannot be said that Log No. SQ-16-00652 would have put prison officials on notice[6] that Plaintiff was attacking the validity of RVR log no. 4690 as a retaliatory act by Defendant Giacomazzi since he mentions that it was "C/O Lopez" who issued the RVR for possession of a deadly weapon. See, e.g., Morton, 599 F.3d at 946. Nor does he allege that C/O Lopez issued the RVR in retaliation. In addition, nowhere in the grievance does Plaintiff complain that the RVR was improperly reviewed and improperly approved to put prison officials on notice that Plaintiff sought relief against Defendants Petrovic and Dorsey for their involvement in the disciplinary proceedings. Id. Rather, Plaintiff sought action only in connection with how the cell search was conducted, asserting, among other things, that he should have been present and that he was not issued a correct property receipt. Dkt. No. 66-5 at 42.

Based on the foregoing, the Court finds Defendants have shown that there is no genuine dispute of material fact that Plaintiff failed to exhaust his retaliation claim through Log No. SQ-16-00652.

---

[6] Plaintiff includes what he purports to be part of a decision in "Williams v. Ramero, 2023 U.S. Dist. Lexis 12546," apparently to assert that satisfying CCR-3084.2(a)(3) was not required to exhaust a claim where the grievance provided sufficient information by which the prison could identify the appropriate person against whom a claim was being asserted. Dkt. No. 74 at 29. However, "Williams v. Ramero" is distinguishable from Plaintiff's case because the allegations in his grievance were not sufficient to provide notice to prison officials that Plaintiff was seeking relief for a retaliatory RVR.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### c.    Grievance Log No. SQ-G-16-1828

Defendants contend that Plaintiff submitted one grievance concerning RVR log no. 4690: Log No. SQ-G-16-1828.  Dkt. No. 66-2 at 14.  In that grievance, Plaintiff claimed that there were various due process errors at the second disciplinary hearing for this RVR, i.e., the disciplinary hearing on the re-issued and re-heard RVR.  Id.  Plaintiff did not allege that RVR log no. 4690 was issued, reviewed, or approved as an act of retaliation by Defendants.  Id.

In response, Plaintiff does not contend that Log No. SQ-G-16-1828 exhausted his retaliation claim.  Rather, he asserts that he had no available remedy because had he raised "those issues and events" "again" in Log No. SQ-G-16-1828, "the appeal would have been cancelled under CCR-3084.6(c)(2), and to appeal the cancellation would have been a dead[]end with no remedy [*sic*]."  Dkt. No. 74 at 28.  He also contends that he ran out of space on the form, and that if he had attempted to add any more issues, the grievance would have been rejected under CCR-3084.6(b)(10), resulting in an "uncurable dead[]end."  Id.  The Court will discuss whether Plaintiff has shown that generally available remedies were not available to him below.  Otherwise, it is clearly undisputed that Log No. SQ-G-16-1828 did not exhaust Plaintiff's retaliation claim with respect to any Defendant.

### 2.    Exhaustion Based on Decision On the Merits

Plaintiff asserts that even if there were any flaws in his grievances, prison officials had an opportunity to correct them but chose to address them on the merits.  Dkt. No. 74 at 34, citing Reyes v. Smith, 810 F.3d 654 (9th Cir. 2016).

If an inmate's grievance does not comply with a procedural rule but prison officials decide it on the merits anyway at all available levels of administrative review, it is exhausted.  Reyes, 810 F.3d at 656, 658.  Thus, a California inmate whose grievance failed to name all staff members involved in his case, as required by former 15 Cal. Code Regs. § 3084.2(a)(3) (repealed eff. June 1, 2020), nevertheless exhausted his claim of deliberate

United States District Court
Northern District of California

indifference to his serious medical needs because that claim was decided on its merits at all levels of review.  See id. at 656-57.  And an Arizona inmate disciplined for not working on Sabbath exhausted his religious exercise claim by using the prison's disciplinary appeal process in which prison officials upheld the discipline over his defense of religious observation.  See Fuqua v. Ryan, 890 F.3d 838, 845-48 (9th Cir. 2018) (inmate not required to pursue simultaneous administrative appeal procedures – one for disciplinary charges, and another for conditions of confinement – to exhaust a single claim that his discipline for not working on religious holiday violated his rights).

Plaintiff's assertion that he exhausted administrative remedies under Reyes is unpersuasive simply because none of the three grievances discussed above involved the claim that Defendants issued an RVR in retaliation for Plaintiff's protected conduct.  See supra at 14-18.  Grievance Log No. SQ-C-16-00464 preceded the allegedly retaliatory RVR and did not involve any claim based thereon against Defendants.  Id. at 14.  Accordingly, it cannot be said that there was any procedural defect with that grievance, such as a failure to name all staff members involved, which prison officials ignored when deciding it on the merits.  Secondly, Log No. SQ-16-00652 also did not involve a specific claim for retaliation based on RVR log no. 4690 but rather complained of the circumstances of the March 5, 2016 cell search.  Id. at 16-17.  Accordingly, it cannot be said that prison officials decided the merits of a claim involving a retaliatory RVR, and there is no indication that a failure to name involved staff members was ignored.  Lastly, Log No. SQ-G-16-1828 involved only due process claims, not retaliation.  Id. at 18-19.  Accordingly, Plaintiff has failed to establish that his retaliation claim was exhausted under Reyes, 810 F.3d at 656, 658.

Defendants have met their initial burden of proving that there was an available administrative remedy, and that Plaintiff did not exhaust that available administrative remedy.  The undisputed evidence shows that Plaintiff was able to file various grievances during the relevant period, and that none of them exhausted the retaliation claim against

1  Defendants in this action.  Albino, 747 F.3d at 1172.  Accordingly, the burden shifts to

2  Plaintiff to come forward with evidence showing that there is something in his particular

3  case that made the existing and generally available administrative remedies effectively

4  unavailable to him.  Id.

### 3.    Administrative Remedies Not Available

6       Exhaustion of all "available" remedies is mandatory; those remedies need not meet

7  federal standards, nor must they be "plain, speedy and effective."  Porter, 534 U.S. at 524;

8  Booth v. Churner, 532 U.S. 731, 739-40 & n.5 (2001).  Even when the prisoner seeks relief

9  not available in grievance proceedings, notably money damages, exhaustion is a

10  prerequisite to suit.  Id. at 741.  A prisoner "seeking only money damages must complete a

11  prison administrative process that could provide some sort of relief on the complaint

12  stated, but no money."  Booth, 532 U.S. at 739.

13       "Under § 1997e(a), the exhaustion requirement hinges on the 'availab[ility]' of

14  administrative remedies:  An inmate, that is, must exhaust available remedies, but need not

15  exhaust unavailable ones."  Ross, 578 U.S. at 642 (alteration in original); see Andres v.

16  Marshall, 867 F.3d 1076, 1078 (9th Cir. 2017) (per curiam); see also Brown v. Valoff, 422

17  F.3d 926, 935 (9th Cir. 2005) ("The obligation to exhaust available remedies persists as

18  long as some remedy remains available.  Once that is no longer the case, then there are no

19  remedies ... available, and the prisoner need not further pursue the grievance.") (citation

20  and internal quotation marks omitted).  "To be available, a remedy must be available as a

21  practical matter; it must be capable of use; at hand."  Albino v. Baca, 747 F.3d 1162, 1171

22  (9th Cir. 2014) (en banc) (citation and internal quotation marks omitted).

23       "Considerable deference is owed to those who administer prison systems."  Fuqua,

24  890 F.3d at 845.  "When an administrative process is susceptible of multiple reasonable

25  interpretations, Congress has determined that the inmate should err on the side of

26  exhaustion."  Ross, 578 U.S. at 644.  Nevertheless, there are "three kinds of circumstances

27  in which an administrative remedy, although officially on the books, is not capable of use

to obtain relief." <u>Id.</u> at 643.  First, "an administrative procedure is unavailable when (despite what regulations or guidance materials may promise) it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." <u>Id.</u> (offering as an example a prison handbook "directing inmates to submit their grievances to a particular administrative office—but in practice that office disclaims the capacity to consider those petitions").  Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use." <u>Id.</u> (offering as an example a situation where "some mechanism exists to provide relief, but no ordinary person can discern or navigate it"); <u>see</u> <u>Fuqua</u>, 890 F. 3d at 849 (in this category is expectation that inmate pursue simultaneous administrative appeal procedures --- one for disciplinary charges, and another for conditions of confinement --- to exhaust a single claim that his discipline for not working on religious holiday violated his rights).  Third, an administrative remedy is not available "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." <u>Ross</u>, 578 U.S. at 644 (citing as examples <u>Woodford</u>, 548 U.S. at 102 along with various appellate court cases addressing "a variety of instances in which officials misled or threatened individual inmates so as to prevent their use of otherwise proper procedures.").  The Supreme Court in <u>Ross</u> describes the above categories as "three kinds of circumstances," <u>id.</u> at 643, but does not suggest that they are exclusive.

A prisoner must provide evidence, not just make conclusory allegations, to meet his burden to show that existing and generally available administrative remedies were effectively unavailable.  <u>See</u> <u>Draper v. Rosario</u>, 836 F.3d 1072, 1079-80 (9th Cir. 2016).  A prisoner's "unsupported allegations" regarding impediments to exhaustion are insufficient to create a triable issue of fact.  <u>Id.</u> (plaintiff's statements that prison officials had "engaged in impeding and unethical conduct of obstructing" his inmate appeals "from being exhausted in a timely manner," and had "prohibited and impeded" his efforts to exhaust were insufficient to create a triable issue because the prisoner did not explain what

kinds of impeding and unethical conduct occurred).

Plaintiff asserts several reasons to believe there were no available remedies to exhaust: (1) he was told by Lt. Lamberton that there was no available remedy; (2) he was not aware of all the requirements under CCR-3084.2(a)(3); and (3) he was deterred by threats and intimidation.  Dkt. No. 74 at 31-34.

### a. <u>Informed by Prison Staff</u>

Plaintiff asserts that Lt. Lamberton (nonparty) misinformed him regarding Log No. SQ-C-16-00464, that his "request for administrative actions such as the placement of documentation in a staff member's personnel file[,] official reprimands of staff[,] removal[,] removal or reassignment of staff from a position[,] and/or monetary compensation" were not available remedies through the grievance process.  Dkt. No. 74 at 31.  He also alleges that Lt. Lamberton told him that "whether or not RVR #4690(R1) was issued as an act of retaliation… or whether or not Dorsey, Petrovic, or Giacomazzi took adverse actions against him… were all beyond the scope of the appeals process."  <u>Id.</u>  In reply, Defendants contend that Lt. Lamberton's statements are inadmissible hearsay.  Dkt. No. 77 at 9, citing Fed. R. Evid. 800.  Defendants also contend that even if the statements were admissible, Lt. Lamberton did not provide misinformation.  <u>Id.</u>  Defendants assert that Plaintiff was required to exhaust his claims even though he sought relief not available in grievance proceedings, e.g., monetary relief.  <u>Id.</u>, citing <u>Booth v. Churner</u>, 532 U.S. 731, 740-41 (2001).  Defendants also point out that Lt. Lamberton's alleged statement that the retaliation claim involving RVR log no. 4690 was beyond the scope of the appeals process for Log No. SQ-C-16-00464 was accurate since that grievance concerned a February 4, 2016 cell search, and RVR log no. 4690 concerned a razorblade found in Plaintiff's cell on March 5, 2016.  <u>Id.</u> at 9-10.

After a careful review of the evidence and construing facts in the light most favorable to Plaintiff, the Court finds there is no genuine issues of material fact as to whether Lt. Lamberton's statements rendered administrative remedies unavailable to

Plaintiff with respect to a claim based on a retaliatory RVR.  Even assuming that Lt. Lamberton's off-record statements were true and admissible, the Court finds available administrative remedies remained available to Plaintiff to exhaust his retaliation claims. The evidence indicates that Lt. Lamberton conducted an interview with Plaintiff for the second level of review for Log No. SQ-C-16-00464, and then issued that decision on April 20, 2016.  Moseley Decl., Ex. 4, Dkt. No. 66-7 at 19-20.  Accordingly, Lt. Lamberton's statements informing Plaintiff of the types of administrative actions that were not available were made with regard to his requested actions in Log No. SQ-C-16-00464.  Likewise, Lt. Lamberton's statement that Plaintiff's claim regarding RVR log no. 4690 was beyond the scope of the appeals process was also in reference to Log No. SQ-C-16-00464.  There is no allegation that Lt. Lamberton informed Plaintiff that he could not file a separate grievance challenging RVR log no. 4690.  See, e.g., Williams v. Paramo, 775 F.3d 1182, 1191-92 (9th Cir. 2015).  Nor can it be said that Plaintiff reasonably believed that no more remedies were available to him with respect to such a claim, especially when Lt. Lamberton was interviewing Plaintiff for his second level appeal of grievance Log No. SQ-C-16-00464. In this context, it is clear that generally available administrative remedies remained available to Plaintiff to file a separate grievance based on the retaliatory RVR, particularly when Plaintiff continued to file numerous grievances thereafter.

### b.    Requirements of "CCR-3084.2(a)(3)"

Plaintiff's second argument is that while he was aware that Cal. Code Regs. tit. 15, § 3084.2(a)(3) "required him to name the staff members involved in the issue being appealed but he did not know he was required to describe their involvement in the issue being appealed or any other aspects" of that regulation.  Dkt. No. 74 at 33.  He asserts that he attempted to obtain his own copy of "Title 15 Rule Book" but prison official refused to provide it to him.  Id., citing Passineau v. Oxborrow, No. 1:12-cv-01894-LJO-GSA-PC, 2014 U.S. Dist. LEXIS 178968, at *25-26 (E.D. Cal. Dec. 30, 2014).  In reply, Defendants assert that Passineau holds that the prison officials' failure to give plaintiff a Title 15 rule

24

book did not render administrative remedies unavailable because staff did not affirmatively interfere with plaintiff's ability to exhaust administrative remedies or that the process was unknowable despite his effort to become informed.  Dkt. No. 77 at 10, citing <u>Passineau</u>, 2014 U.S. Dist. LEXIS 178968, at *25-26.  Furthermore, Defendants assert that knowledge of this particular regulation was not required for Plaintiff to exhaust his administrative remedies as the grievance form instructed Plaintiff to "explain your issue."  <u>Id.</u>

After a careful review of the evidence and construing facts in the light most favorable to Plaintiff, the Court finds there is no genuine issues of material fact as to whether lack of adequate knowledge of Cal. Code Regs. tit. 15, § 3084.2(a)(3) and lack of his own copy of Title 15 rendered administrative remedies unavailable to Plaintiff with respect to a claim based on a retaliatory RVR.  Plaintiff asserts that it was the failure of the prison to provide him with his *own* copy of Title 15 that was at fault.  However, Plaintiff does not allege that he was denied access to a copy, such as at the law library.  Furthermore, as discussed above, it was not strictly Plaintiff's failure to name all staff members under Cal. Code Regs. tit. 15, § 3084.2(a)(3) that rendered his grievances deficient.  Rather, it was his failure to essentially "explain [his]issue," specifically his claim that RVR log no. 4690 was issued, reviewed, and approved in retaliation by Defendants Giacomazzi, Petrovic, and Dorsey.  <u>See supra</u> at 14-19.  As discussed above, Plaintiff did not describe this claim in any of the three relevant grievances identified by the parties.  <u>Id.</u>  Accordingly, Plaintiff's argument that administrative remedies were unavailable based on this argument fails.

### c.    <u>Threats and Intimidation</u>

Lastly, Plaintiff asserts that "intimidation… [and] threats of physical violence and adverse consequences from prison officials made the appeal system a risk that plaintiff suffered from, making the appeal system unavailable, but nevertheless endured anyway."  Dkt. No. 74 at 33.  Plaintiff asserts that Defendants carried out "[e]very single threat they made to me in regard to my use of CDCR-Form-22s, 602 appeals/staff complaints, etc."

Hash Decl. ¶ 92, Dkt. No. 74 at 81.  Such threats included placement in the adjustment center with death row inmates who would "beat" him and loading his C-file with RVRs so that he would be put on closed custody status.  Id.  He asserts that "had things not been as urgent as I described... I never would have risked using the inmate appeal system."  Hash Decl. ¶ 94, Dkt. No. 74 at 82.  In reply, Defendants point out that Plaintiff states that despite the threats and intimidation, he "nevertheless endured" and submitted grievances.  Dkt. No. 77 at 11.  Defendants contend that therefore, administrative remedies were available because Plaintiff was not actually deterred from submitting grievances.  Id.  Defendants also argue that the alleged threats and intimidation by staff is inadmissible hearsay.  Id.

After a careful review of the evidence and construing facts in the light most favorable to Plaintiff, the Court finds there is no genuine issues of material fact as to whether threats and intimidation by staff, Defendants or otherwise, rendered administrative remedies unavailable to Plaintiff with respect to a claim based on a retaliatory RVR.  Even assuming that Plaintiff was subjected to threats and intimidation as he alleges, he admits that he "endured" and went ahead and filed administrative grievances.  The undisputed evidence is that Plaintiff filed forty other grievances between March 5, 2016 (the date of the cell search) and February 3, 2020.  See supra at 8.  Ross requires that prison officials "thwart" an inmate from taking advantage of a grievance process.  578 U.S. at 644.  Here, there is substantial undisputed evidence that Plaintiff continued to have access to and did take advantage of SQRC's grievance process.  He was clearly not "thwarted" by Defendants' alleged threats and intimidation.  Accordingly, Plaintiff's argument that administrative remedies were unavailable based on threats and intimidation fails.

### 4.    Conclusion

Based on the foregoing, Defendants have shown that Plaintiff failed to properly exhaust all available administrative remedies with respect to the retaliation claim against Defendants Giacomazzi, Petrovic, and Dorsey.  In response, Plaintiff has failed to show

that there was something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him.  See Albino, 747 F.3d at 1172.  Accordingly, Defendants are entitled to summary judgment on this claim under Rule 56 based on Plaintiff's failure to exhaust available administrative remedies prior to filing suit.  Id. at 1166.

Because Plaintiff's failure to exhaust bars this matter from proceeding on the merits of his retaliation claim, the Court does not address Defendants' other grounds for summary judgment as to that claim.  See Jones, 549 U.S. at 212 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court.").

## CONCLUSION

For the foregoing reasons, Defendants M. Giacomazzi, D. Petrovic, and D. Dorsey's motion for summary judgment is **GRANTED**.  Dkt. No. 66.  The retaliation claim against them is **DISMISSED** for failure to exhaust administrative remedies prior to filing suit.

This order terminates Docket No. 66.

**IT IS SO ORDERED.**

Dated:  September 30, 2025

EDWARD J. DAVILA
United States District Judge